David S. Sherman v. Commissioner.
David S. Sherman v. Commissioner
Docket No. 24231.
United States Tax Court
1951 Tax Ct. Memo LEXIS 14; 10 T.C.M. (CCH) 1203; T.C.M. (RIA) 51370; December 20, 1951
*14 Petitioner, the managing partner in a wholesale liquor business, had four nonresident partners who invested in the partnership but performed no services for it. In 1943, petitioner gave his wife a share of his interest in the business, and a new partnership agreement was executed between petitioner, his wife, and the nonresident partners. In the latter part of 1944, a new partnership agreement was executed in which the assistant manager of the business was given a five per cent interest in the profits of the business. Petitioner, his wife, the nonresident partners, and the assistant manager executed the agreement. Held, under all the facts, petitioner's wife was a valid partner in the business for the years in question. E. Charles Eichenbaum, Esq., Boyle Bldg., Little Rock, Ark., Leonard L. Scott, Esq., and William M. Moorhead, Esq., for the petitioner. F. S. Gettle, Esq., for the respondent. RICE
Memorandum Findings of Fact and Opinion The respondent determined deficiencies in income taxes for the years 1944, 1945, and 1946 in the amounts of $49,808.16, $59,092.67, and $210.32, respectively. At the hearing, the petitioner conceded the correctness of respondent's *15 disallowance of a dependency credit for each of the years 1944, 1945, and 1946, leaving in controversy deficiencies for the years 1944 and 1945 only. The sole question is whether in these years petitioner's wife, Dorothy C. Sherman (hereinafter referred to as Dorothy), was a valid partner of F. Strauss & Son, Little Rock, Arkansas, for Federal income-tax purposes. Findings of Fact Petitioner is a resident of Little Rock, Arkansas. Income tax returns for the years in controversy were filed with the collector of internal revenue for the district of Arkansas. He was married to Dorothy in 1927. In 1935, petitioner began to work as a salesman for an Arkansas corporation engaged in the wholesale liquor business. Prior to that time, petitioner had engaged in numerous businesses with only a moderate degree of success. The stockholders, who were nonresidents of the State of Arkansas, were F. Strauss, C. M. Strauss, Herman Mason, and Irving Shlenker; and each held one-quarter of the stock. Petitioner was designated manager during the latter part of 1935. In 1936, he purchased 10 per cent of the stock from the other stockholders. The corporation was dissolved in 1936 and a partnership *16 formed between the four original stockholders and petitioner. The nonresident partners each had a 22 1/2 per cent interest in the partnership, and petitioner had a 10 per cent interest. In 1939, petitioner purchased an additional 10 per cent interest in the partnership, and a new written partnership agreement was executed in which the five partners held equal interests. The partnership continued on that basis until May 23, 1941, when petitioner's capital interest was increased to 55 per cent. Petitioner supplied no new capital, and all partners retained the same profit-sharing interest of 20 per cent each. Petitioner gave the other partners his nonnegotiable note amounting to $91,094.56 for such increased interest. This transaction was for the purpose of showing on the record that a majority ownership in the partnership was held by a resident of the State of Arkansas and thereby complied with the Arkansas liquor statutes and regulations. On or about July 1, 1943, petitioner by bill of sale transferred to Dorothy an 8 per cent capital interest in the partnership. All the parties then executed a written partnership agreement reciting that petitioner had a 47 per cent capital interest, *17 Dorothy 8 per cent, and the other partners 11 1/4 per cent each; and that after a partnership salary to petitioner, the profits should be distributed 10 per cent each to petitioner and Dorothy and 20 per cent to the four nonresident partners. The agreement also provided that losses were to be borne by the partners in this same proportion. Petitioner timely filed a Federal Gift Tax return for the year 1943 in regard to this transfer. Arkansas legalized the sale of liquor in 1935. Prior to 1943, numerous attempts had been made at each session of the State Legislature to repeal or greatly limit the sale of liquor, and about 15 or 20 counties of the 75 in Arkansas had gone dry by that time. The liquor business in Arkansas was in a precarious situation during that period. The nonresident partners were well established in the wholesale liquor business in other states under arrangements similar to the one which they had with petitioner; namely, they invested their money and had a managing partner who operated the business. Petitioner, however, was concerned about his personal situation and, consequently, in 1943 actively sought opportunities for the opening of a wholesale liquor business *18 in some other state. He was unable to buy an interest in any of the other businesses of his partners. He traveled to numerous places in the United States to examine possibilities for establishing a wholesale liquor business; and in March or April, 1944, Kansas City was selected as the most appropriate place for opening a new business. In November, 1944, such business was opened; and subsequently, a branch was also established in St. Louis, Missouri. As a result of these investigations and the opening of the new branches, petitioner spent less than 25 per cent of his time during 1943, 1944, and 1945 in Little Rock. Charles Cone, the assistant manager of the Little Rock business, handled virtually all of the activities for the business from the fall of 1943 on, although he was not officially made manager until some time in 1944. During 1944, petitioner drew $125 per week as salary and Cone $93.50 per week. In 1945 petitioner drew $125 per week and Cone $150 per week. Petitioner remained in charge of policy and merchandisepurchase decisions, but all other activities were handled by Cone. On January 1, 1945, Cone was admitted as a partner without the investment of any capital and *19 given a five per cent interest in the profits of the partnership. The partnership agreement was executed on December 30, 1944, by the petitioner, Dorothy, Cone, and the four nonresident partners. Under this agreement, the capital interests remained unchanged; but Cone was to receive five per cent of the profits, petitioner and Dorothy were to receive 9 1/2 per cent each, and the nonresident partners were to receive 19 per cent each. Losses were to be shared on the same percentage basis. On December 31, 1945, the assets and liabilities of the partnership were transferred to and assumed by a newly formed corporation with a subscribed capital of $400,000. Petitioner and Dorothy each subscribed and paid for 1,100 shares, and the nonresident partners each subscribed and paid for 450 shares. Petitioner's and Dorothy's shares were each subject to an option held by the nonresident stockholders to purchase 700 shares, a total of 1,400 shares or 35 per cent of the stock. Within a year Cone purchased 100 shares each from petitioner and his wife. The partnership still retained some assets for the purposes of liquidation, which was finally completed in July, 1947. When petitioner gave his wife *20 a share of his partnership interest in July, 1943, he was prompted by several reasons. One of these was that since petitioner was seeking a wholesale liquor business outside of Arkansas, it might become necessary to have a new resident partner who would be able to qualify under Arkansas law if the petitioner were required to take up residence in some other state in order to qualify to do business there. He also wanted to protect Dorothy and make her independent by giving her a share of his Arkansas business in case he might be unsuccessful in his new enterprises. The nonresident partners never performed any services for the partnership, nor did they participate in active administration of the business. They received financial statements and participated in infrequent, informal conferences. After Dorothy received a share in the business, she also received the financial statements and sat in on the conferences. On August 3, 1943, Dorothy, along with the other partners, applied to the Alcoholic Tax Unit for a "Wholesalers' Basic Permit" under the Federal Alcohol Administration Act. She also joined with the other partners in executing powers of attorney sent to the Alcohol Tax Unit of *21 the Bureau of Internal Revenue. The only parties qualified to sign checks for the business were petitioner, Cone, and two other employees of the Arkansas partnership. Distributions were made to the partners by monthly checks issued in proportion to the interest of each partner in the profits. In addition, petitioner received his salary. At times, the partnership purchased Government bonds, and the purchase price was charged in proportion, against the partners' respective accounts. A separate account was carried on the partnership ledger for each of the partners, including Dorothy. Any withdrawals or advances by any of the partners were charged against their respective accounts. Dorothy had a separate bank account on which she was the only authorized signatory, and the proceeds she received from the business were deposited in this account. She used such money primarily for investments, and none of it ever came into petitioner's hands nor was it ever used for household or ordinary family expenses nor put back into the partnership. During the years 1944 and 1945, Dorothy was a bona fide partner of F. Strauss & Son for Federal income-tax purposes. Opinion RICE, Judge: The sole *22 issue is whether during the years in question Dorothy was a valid partner for Federal tax purposes in the partnership of F. Strauss & Son. This is a question of fact which is determined by an examination of all the facts and circumstances of record. Commissioner v. Culbertson, 337 U.S. 733 (1949). The partnership of F. Strauss & Son was not a close family partnership. Prior to the admission of Dorothy as a partner, petitioner had four nonresident partners each of whom received a 20 per cent interest in the profits. These four men had an established business practice of investing in a wholesale liquor business in a particular area and having an active managing partner who operated the business. When the gift was made by petitioner to Dorothy of a portion of his partnership interest, Dorothy was accepted as a partner by the other partners as was evidenced by the written partnership agreement of July 1, 1943. Such acceptance by nonrelated persons is an important factor to be considered in cases such as the present one. See Edward A. Theurkauf, 13 T.C. 529 (1949). Another factor which this case has in common with the Theurkauf case is that a salary was paid *23 to the managing partner prior to any distribution of profits. Dorothy's partnership interest was similar to that of the four nonresident partners. None of them performed any services for the partnership, but they all contributed capital. An additional fact which has led us to the conclusion that Dorothy was a valid partner was the execution of the second partnership agreement on December 30, 1944, in which Cone was admitted as a partner into the business. Dorothy and petitioner each gave up a one-half per cent interest in the profits, and the nonresident partners each gave up a one per cent interest. As a partner under the agreement of July, 1943, Dorothy could have refused to join the new partnership with Cone. When she joined in the execution of the agreement, she put in her share of the capital; and in a business such as this, capital is an important income-producing factor. See Edward A. Theurkauf, supra; Yost v. Commissioner, 190 Fed. (2d) 131 (C.A. 5, 1951). One of the reasons why petitioner gave Dorothy an interest and why she became a member of the partnership was because of the requirements of Arkansas relative to a resident partner in a liquor business in *24 that state. When petitioner began investigations to obtain a business interest in some state other than Arkansas, due to the uncertainty of continued liquor operations in Arkansas, he anticipated that he might have to establish a residence in some other state. If Dorothy were a member of the partnership, it would be possible to vest her with the requisite ownership so that there still might be a resident partner in the business. In addition, since any new operation would require petitioner to assume large liabilities, he wanted Dorothy to have a secured income which would not be subject to such liabilities. During 1944 and 1945 petitioner's activities in the Arkansas business were slight. While he still remained in charge of decisions regarding policy and merchandise purchases, the actual operation of the business was performed by Cone. Dorothy had complete control over the income which she received from the partnership. Such income was not used for ordinary family expenditures, but was used primarily for investments. Petitioner never received any of her income. Under the enumerated facts, plus all the others appearing in the record, we hold that Dorothy was a valid partner for *25 tax purposes in F. Strauss & Son and that respondent erred in treating her share of profits from such partnership as income to petitioner. Decision will be entered under Rule 50.